IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| FRANKLIN D. BAXTER, ) | |
| ) | |
| Plaintiff, ) | Civil Case No. 06-1728-KI |
| ) | |
| vs. ) | OPINION AND ORDER |
| ) | |
| MICHAEL J. ASTRUE[1], Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

Max Rae
P. O. Box 7790
Salem, Oregon 97303

    Attorney for Plaintiff

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Linda S. McMahon as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Page 1 - OPINION AND ORDER

Karin J. Immergut
United States Attorney
District of Oregon
Neil J. Evans
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon  97204-2902

Joanne E. Dantonio
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

    Attorneys for Defendant

KING, Judge:

Plaintiff Franklin Baxter brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB").  I affirm the decision of the Commissioner.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the

impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ found that Baxter had a severe impairment of atypical lymphocytic leukemia and nonsevere impairments of myocardiac difficulties which had not required treatment since stent placement in 1999, arthritis in his hands and back, and alcohol dependence. However, the

Page 4 - OPINION AND ORDER

ALJ found that the severe and nonsevere impairments, either singly or in combination, were not severe enough to meet or medically equal the requirements of any of the impairments listed in Appendix 1, Subpart P of the Social Security Regulations. After not fully crediting Baxter, his wife, and his treating primary care physician, the ALJ concluded that Baxter had the residual functional capacity to perform light work, after crediting to some extent his allegations of fatigue. Based on the testimony of a vocational expert, the ALJ found that Baxter could return to all of his past work and consequently was not disabled under the Act from his alleged onset date of March 31, 2003 to his date last insured of June 30, 2004.

## FACTS

Baxter alleges he became disabled as of March 31, 2003 due to atypical lymphocytic leukemia. He had reached his 65th birthday at the time of the hearing and was receiving Social Security Retirement Benefits. Baxter had previously worked steadily in the trucking industry in sales and terminal management positions. He was diagnosed with atypical lymphocytic leukemia in 2002. Baxter was thereafter followed by an oncologist who concluded that Baxter's illness did not require any active treatment or medications during the relevant time period.

Baxter complains of constant fatigue and can only be active for one to two hours before needing to rest. He sleeps from 6:30 PM to 7:00 AM every night and naps for an hour or more each day but is still tired. Baxter watches TV, visits his children, and helps his wife with some chores around the house, including laundry, washing dishes, vacuuming, shopping, and mowing a small lawn. Baxter and his wife testified that he left his full time job in 2001 and started working part time out of their home because he was too fatigued to continue at a full-time pace. Baxter's oncologist followed him with blood test every three months but had never prescribed

treatment for the leukemia up through the time of the hearing in 2006, well past the date last insured.

According to Baxter's wife, he is able to work on chores about twice a week for a couple of hours. Baxter no longer has the energy to work on his hobby making furniture. She believes that Baxter's energy level has decreased steadily over the past several years, causing him to change from a very active person to a person who is tired most of the time. This has caused the Baxters to make many changes in their daily lives. In the time frame of 2001 to 2003, a mile-long walk would tire Baxter to the point that he would go to bed when he returned home.

## DISCUSSION

I.     Physician Opinion

Baxter contends that the ALJ erred by failing to give full weight to the opinion of his treating physician, Dr. Eliason. He argues that his treating physician is most familiar with his longitudinal decline of functioning. Baxter contends that Dr. Eliason's description of his fatigue is consistent with the diagnosis of leukemia and that the general references to fatigue in the chart notes do not conflict with the far more specific quantification which Dr. Eliason provided in the Medical Source Statement.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and

convincing reasons. Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. Id. at 831.

Dr. Eliason, Baxter's primary care physician, completed a Medical Source Statement on April 4, 2006, approximately three months after Baxter's date last insured. Dr. Eliason stated that in an eight hour work day, Baxter could sit for one hour, stand or walk about for two hours, and to relieve fatigue, he needed five hours total cumulative time resting by either lying down or reclining in a supine position. Dr. Eliason also stated that Baxter's restrictions had been this severe since March 31, 2003.

The ALJ noted that the examination records and laboratory clinical findings consistently resulted in no need for any medical treatment with only mild fatigue assessed, which contradicted Baxter's assertion of debilitating fatigue. Additionally, Baxter's written reports from May 15, 2004 and July 15, 2004 only reflected increased problems from fatigue but still with no treatment. The treating oncologist continually noted in Baxter's chart that he had been doing well with some fatigue which is not progressive and that he was robust appearing. For these reasons, the ALJ gave the Medical Source Statement no weight because it was not consistent with the substantive and medical evidence of record for the relevant period.

The ALJ properly summarized the chart notes from the two doctors that although Baxter had fatigue, it was not progressing during the relevant period. For example, in Dr. Eliason's chart note from July 25, 2003, he states, "He has been doing quite well over the past few months.

Page 7 - OPINION AND ORDER

He still is experiencing some fatigue, but it is not progressive. He is still able to do the activities he wants to do every day." Tr. 127. It is also true that Baxter was receiving no treatment, even though he was monitored with blood work every three months. There is nothing in the medical records to support the severe resting limitation given by Dr. Eliason. I find that the ALJ has given clear and convincing reasons for not crediting the limitations in Dr. Eliason's Medical Source Statement.

II.     Baxter's Subjective Symptom Testimony

Baxter contends that the ALJ improperly failed to give full weight to his testimony. He argues that the fact that he claimed disability while retaining a limited productive capacity does not diminish his credibility.

The Commissioner argues that the ALJ properly relied on Baxter's reports to his doctors that he was not experiencing excessive fatigue.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The claimant is not required to produce objective medical evidence of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom. The claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. Id. at 1282. In the second stage of the analysis, the ALJ must assess the

Page 8 - OPINION AND ORDER

credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. Id. at 1284.

Although the ALJ cannot reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its disabling effects. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

As I stated above, the ALJ noted that the examination records and laboratory clinical findings consistently resulted in no need for any medical treatment with only mild fatigue assessed, which contradicted Baxter's assertion of debilitating fatigue, and Baxter's written reports from May 15, 2004 and July 15, 2004 only reflected increased problems from fatigue but still no treatment. The ALJ noted Baxter's statement that he applied for Social Security Retirement Benefits because the collapse of his company left him without a job. The ALJ also noted Baxter's ability to drive, help with some housework and yardwork, watch television eight to ten hours a day, and walk a mile until 2004. For these reasons, the ALJ found that Baxter's testimony was generally credible, reflecting that his alleged fatigue places some limitations on him but not to the point where it would preclude all work prior to the date last insured.

The ALJ's reasons are all supported by the record. The most persuasive reason is contrasting Baxter's allegations with his reports to his physicians, along with their decision not to treat him with any medications during the relevant period and beyond. I conclude that the ALJ

has stated clear and convincing reasons for not fully crediting Baxter's testimony concerning the amount of his fatigue.

I also note that the relevant period is quite limited, from March 31, 2003 to Baxter's date last insured of June 30, 2004. Baxter's blood counts took a significant turn for the worse in October 2005, well after the relevant period. Baxter also complained to the oncologist at that time that he was experiencing more significant fatigue than before. The hearing did not take place until May 10, 2006, nearly two years after the relevant period. By then, the blood counts were even worse. The oncologist was starting to consider chemotherapy but had not yet prescribed it. The record supports the ALJ's conclusion for the limited relevant period. During the two years between the end of the relevant period and the hearing, Baxter's condition worsened significantly when measured objectively. His fatigue also worsened during that time, as he reported to the oncologist. A long time lag like this one makes it difficult to remember the level a of subjective symptom, such as fatigue, that was evident two years earlier. It is also difficult to make any distinctions clear when testifying. Although I agree with the ALJ that Baxter was generally credible, I also agree with the ALJ's conclusion and think that discrepancies were due to the time lag.

III.     Lay Testimony

Baxter contends that the ALJ improperly failed to give full weight to his wife's testimony about his symptoms.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. A medical diagnosis, however, is beyond the competence of lay witnesses. Nguyen v. Chater, 100

Page 10 - OPINION AND ORDER

F.3d 1462, 1467 (9th Cir. 1996). A legitimate reason to discount lay testimony is that it conflicts with medical evidence. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

The ALJ stated that Baxter's wife's testimony essentially mirrored her husband's testimony of fatigue. As stated above, the ALJ relied on the discrepancy between the medical charts and the level of fatigue stated in testimony. The ALJ found that Baxter's wife's testimony was generally credible, reflecting that Baxter's alleged fatigue places some limitations on him but not to the point where it would preclude all work prior to the date last insured.

The conflict with the medical evidence is a valid reason to limit reliance on Baxter's wife's testimony. The ALJ did not err.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards, and therefore the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

Dated this   19th   day of June, 2007.

                                                  /s/ Garr M. King
                                                  Garr M. King
                                                  United States District Judge